**Willie NANCE, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

No. 460, 2005.

Supreme Court of Delaware.

Submitted: April 26, 2006.

Decided: May 18, 2006.

Rehearing En Banc Denied June 6, 2006.

---

Joseph M. Bernstein, Esquire, Wilmington, Delaware, for appellant.

Timothy J. Donovan, Jr., Esquire, Department of Justice, Wilmington, Delaware, for appellee.

Before HOLLAND, BERGER and RIDGELY, Justices.

HOLLAND, Justice.

The defendant-appellant, Willie Nance ("Nance"), appeals from his judgments of conviction in the Superior Court for four counts of Possession of a Firearm During the Commission of a Felony. Nance was also convicted of Possession With Intent to Deliver Cocaine and Possession With Intent to Deliver Marijuana. Nance was sentenced on to a total of twelve years of incarceration at Level V, followed by probation.

Nance argues that the four convictions for Possession of a Firearm During the Commission of a Felony should actually only be two convictions because the Double Jeopardy Clause of the United States Constitution prohibits multiple convictions for the same conduct. We have concluded that Nance misconstrues the protection afforded by the Double Jeopardy Clause. The legislative intent of the relevant statute was to impose multiple convictions for the prohibited conduct. Consequently,

there is no violation of the Double Jeopardy Clause.[1] Therefore, the judgments of the Superior Court are affirmed.

### Facts

The events, which led to the charges against Nance, began on April 8, 2004 when Wilmington police were called to investigate a shoplifting that occurred at a convenience store on South Heald Street. The proprietor, Garurang Shah, recognized the shoplifter, but did not know his name. He was able to recall seeing the shoplifter before with Nance. Shah suggested to the police that the shoplifter might be at Nance's house. The police began to search for the suspect in the immediate vicinity. Approximately one and a half blocks away from the store they encountered Lamar Joe ("Joe"), who matched the suspect's description.

As the officers approached Joe, they saw him drop a clear plastic baggie from his right hand. One officer retrieved the baggie, which contained a green leafy substance that appeared to be marijuana. The officers then handcuffed Joe and conducted a search of his person, which revealed a small dagger and $300 in cash. Joe told the police that the money was not from a drug sale, but it was from his aunt. He gave the officers her address.

When the officers went to the address to confirm Joe's story, Nance answered the door. They asked Nance if Lamar Joe lived there and Nance replied that he did. The officers noticed a strong smell of marijuana coming from inside the apartment. Nance allowed both officers into the residence. Once inside, the officers saw in plain view a baggie that contained what looked like cocaine and a scale commonly used to weigh drugs.

The officers read Nance his *Miranda*[2] rights. Nance agreed to speak with them. Nance also signed a written consent to search the room he shared with Joe. One officer asked Nance if there was anything else illegal in the residence. Nance told the officers that there was a 12–gauge shotgun under the couch in his bedroom, and that there was a 32–caliber handgun in a shoebox in his bedroom.

The officers searched the room and found both guns, baggies of crack cocaine, marijuana seeds and baggies commonly used to package drugs. The officers also searched the bedroom of Darlene Nance, Nance's mother, pursuant to her written consent. They found marijuana and a scale in her room.

### Standard of Review

Appeals of constitutional issues generally receive *de novo* review.[3] To preserve an issue for appeal, however, it must be raised in the trial court.[4] Nance did not raise the objections based on the Double Jeopardy Clause in the Superior Court. Constitutional issues that are not raised in the trial court are reviewed for plain error.[5] To constitute plain error, an error must be "so clearly prejudicial to substan-

1. See *Robertson v. State,* 630 A.2d 1084, 1092–93 (Del.1993).

2. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

3. *Abrams v. State,* 689 A.2d 1185, 1187 (Del. 1997)

4. Supr. Ct. R. 8; *see also Wainwright v. State,* 504 A.2d 1096, 1100 (Del.1986).

5. *Abrams v. State,* 689 A.2d at 1187 ("Constitutional claims are subject to plenary or de novo review by this Court to determine if the Superior Court committed an error of law. Since no claim of a constitutional deficiency was ever presented to the Superior Court, this matter may now be reviewed by this Court only for plain error.").

tial rights as to jeopardize the fairness and integrity of the trial process." [6]

### Federal Double Jeopardy Clause

The United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb...." [7] As a constitutional principle, the Double Jeopardy Clause protects against: (1) successive prosecutions; (2) multiple charges under separate statutes; and (3) being charged multiple times under the same statute.[8] According to Nance, his four convictions violate the prohibition against "multiple charges under separate statutes."

When evaluating whether the Double Jeopardy Clause has been violated because a person has been charged under two separate statutes for one act, "[t]he question is whether, both sections being violated by the same act, the accused committed two offenses or only one." [9] To determine this, the Court must look at "whether each provision requires proof of a fact which the other does not." [10] When determining whether the statutory provisions require different factual proof, the general assumption is the legislature "ordinarily does not intend to punish the same offense under two different statutes. However, that rule of construction gives way in the face of clear legislative intent to the contrary." [11] Thus, the primary inquiry must be one of statutory construction and whether there exists clearly expressed legislative intent to impose multiple punishments.[12]

6. *Williams v. State,* 796 A.2d 1281, 1284 (Del. 2002) (finding that a violation of Double Jeopardy principles was plain error).

7. U.S. Const. amend. V.

8. *Williams v. State,* 796 A.2d at 1284 (citing *Schiro v. Farley,* 510 U.S. 222, 229–30, 114 S.Ct. 783, 127 L.Ed.2d 47 (1994); *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932); *United States v. Forman,* 180 F.3d 766, 769 (6th Cir.1999), respectively).

9. *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

10. *Id.*

11. *LeCompte v. State,* 516 A.2d 898, 900 (Del. 1986) (citing *Whalen v. United States,* 445 U.S. 684, 691–92, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980)).

12. *Robertson v. State,* 630 A.2d 1084, 1092–1093 (Del.1993); *Poteat v. State,* 840 A.2d 599, 604 (2003). *See also Mo. v. Hunter,* 459 U.S. 359, 368–69, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983). (holding that because the primary purpose of the Double Jeopardy Clause is to protect against multiple trials, "the question of what punishments are constitutionally permissible is no different from the question of what punishment the Legislative Branch intended to be imposed. *Where Congress intended, as it did here, to impose multiple punishments, imposition of such sentences does not violate the Constitution."*) (quoting *Albernaz v. United States,* 450 U.S. 333, 344, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981)); *U.S. v. Patel,* 370 F.3d 108, 115 (1st Cir.2004) (holding that the threshold question before reaching a *Blockburger* analysis is what was Congress' intent in enacting the statute); *U.S. v. Salameh,* 261 F.3d 271, 277–78 (2d Cir.2001) (holding that multiple punishments for the same conduct does not violate the Constitution because double jeopardy principles do "no more than prevent the sentencing court from prescribing greater punishment than the legislature intended."); *U.S. v. Riddick,* 156 F.3d 505, 511 (3d Cir.1998) (convictions did not violate double jeopardy principles because Congress intended multiple punishments.); *U.S. v. Terry,* 86 F.3d 353, 357 (4th Cir.1996) (same); *U.S. v. Soape,* 169 F.3d 257, 266 (5th Cir.1999) (same); *U.S. v. Cantrell,* 278 F.3d 543, 548 (6th Cir.2001) (same); *U.S. v. Colvin,* 353 F.3d 569, 575 (7th Cir.2003) (same); *U.S. v. Allen,* 247 F.3d 741, 767–69 (8th Cir. 2001) (same); *U.S. v. Keesee,* 358 F.3d 1217, 1220 (9th Cir.2004) (same); *U.S. v. Battle,* 289 F.3d 661, 669 (10th Cir.2002) (same); *U.S. v. Strickland,* 261 F.3d 1271, 1274 (11th

The statute at issue in Nance's appeal is title 11, section 1447 of the Delaware Code, Possession of a Deadly Weapon During the Commission of a Felony, which states "(a) a person who is in the possession of a deadly weapon during the commission of a felony is guilty of possession of a deadly weapon during the commission of a felony."[13] Nance contends that the two underlying felonies in this case, Possession With Intent to Deliver Cocaine, and Possession With Intent to Deliver Marijuana, should be consolidated as one underlying offense for the charge of Possession of a Deadly Weapon During the Commission of a Felony because the conduct was the same. In other words, the possession of two different types of drugs should not matter; only that Nance was in possession of a "controlled substance."

Nance mistakenly relies on *Williams v. State*[14] to support his contention that the trial judge should have only considered one drug conviction when calculating the weapons' charges. In *Williams*, this Court held that the Double Jeopardy Clause prohibited two separate convictions for Possession With Intent to Deliver when only one statute was violated because both convictions involved the same drug, cocaine, and the acts occurred within one place with one intended purpose.[15] Nance correctly acknowledges that the primary difference between *Williams* and the present case is that here two drug statutes were violated because Nance possessed two different types of drugs, and in *Williams* only one statute was violated.

This difference is dispositive. The promulgation of two drug statutes is a clear indication that the legislature intended there to be two separate punishments for the two acts. Thus, calculating the weapons' charges using Nance's two drug convictions is not a violation of the Double Jeopardy Clause.

In this appeal, Nance concedes that charging him for two separate drug felonies does not violate the Double Jeopardy Clause. Nance also concedes that he can receive separate convictions for each gun in his possession, even though the conduct was essentially the same and the only distinguishing factor was the separate gun. In two previous, similar cases, *Robertson v. State*,[16] and *Pauls v. State*,[17] this Court concluded that the legislative intent of section 1447 was to provide separate convictions for a deadly weapon offense "for each felony the defendant committed while in possession of a deadly weapon."[18]

In both *Pauls* and *Robertson*, the defendants argued that section 1447 should not be read to impose one count for each weapon possessed during each felony.[19] The defendants in *Pauls* and *Robertson* contended that if there were only two guns involved, then there should only be two counts of Possession of a Deadly Weapon During the Commission of a Felony, regardless of the number of felonies they committed. In both *Pauls* and *Robertson*, this Court held that charging the defendants with multiple counts of weapons' offenses was consistent with the purpose of the statute, which is to deter the use of a

Cir.2001) (same); *U.S. v. Sumler*, 136 F.3d 188, 190 (D.C.Cir.1998) (same).

13. Del.Code Ann. tit. 11, § 1447 (2001).

14. *Williams v. State*, 796 A.2d 1281 (Del. 2002).

15. *Id.* at 1286.

16. *Robertson v. State*, 630 A.2d 1084 (Del. 1993).

17. *Pauls v. State*, 554 A.2d 1125 (Del.1989).

18. *Robertson v. State*, 630 A.2d at 1093.

19. *Pauls v. State*, 554 A.2d at 1125; *Robertson v. State*, 630 A.2d at 1093.

deadly weapon while committing a felony because the use of a weapon increases the likelihood of harm to the victim.[20]

We have concluded that Nance's argument, that the two underlying drug felonies should converge as one for the purposes of calculating the number of weapons' violations of section 1447, is contrary to the legislative intent as previously determined in *Pauls* and *Robertson*. The purpose of the statute is to deter the use of deadly weapons during the commission of a felony. Therefore, combining the underlying separate drug felonies to reduce the number of convictions for weapons possession would directly contradict the statute's purpose and the legislative intent.

The statute's unambiguous language supports the multiplication of counts of Possession of a Deadly Weapon During the Commission of a Felony by both the number of weapons as well as the number of separate underlying felonies. The Superior Court correctly held that the two separate drug felonies each resulted in two separate weapons charges. Therefore, Nance's four sentences for Possession of a Firearm During the Commission of a Felony did not violate the Double Jeopardy Clause protections in the United States Constitution. Accordingly, we hold that there was no error and *a fortiori* there was no plain error.

### Conclusion

The judgments of the Superior Court are affirmed.

---

20. *Pauls v. State,* 554 A.2d at 1125; *Robertson*     *v. State,* 630 A.2d at 1093.