# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cr. ID No. 1408017362 |
| | ) | |
| OBEDIAH YORK-JAMES, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Submitted: February 14, 2017
Decided: March 8, 2017

## COMMISSIONER'S REPORT AND RECOMMENDATION THAT DEFENDANT'S MOTION FOR POSTCONVICTION RELIEF SHOULD BE DENIED.

Brian J. Robertson, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, Attorney for the State.

Obediah York-James, Sussex Correctional Institution, Georgetown, Delaware, *pro se.*

PARKER, Commissioner

This 8th day of March 2017, upon consideration of Defendant's Motion for Postconviction Relief, it appears to the Court that:

## BACKGROUND, FACTS AND PROCEDURAL HISTORY

1. On December 8, 2014, Defendant Obediah York-James was indicted on the charges of Attempted Murder in the First Degree, two counts of Possession of a Firearm During the Commission of a Felony ("PFDCF"), Robbery in the First Degree, and Conspiracy Second Degree. One count of PFDCF was linked to the robbery and one count of PFDCF was linked to the shooting.

2. The charges stemmed from an August 21, 2014 robbery of a liquor store, Cutrona's Liquors. During the commission of the robbery, Defendant pointed a gun at the clerk, Navin Patel, and shot him twice hitting him in the wrist and the chest. Mr. Patel required extensive surgery to save his life. There was a video recording which captured Defendant's robbery and his shooting of the clerk.[1] This video tape recording was very damaging evidence against Defendant.

3. Defendant was 16 years old at the time of the incident.

4. On April 22, 2015, the parties entered into a plea agreement. The State agreed to allow Defendant to enter a guilty plea to substantially reduced charges. The State agreed to amend the Attempted Murder in the First Degree charge, and allow Defendant to plead guilty to the lesser charge of Assault in the First Degree. In addition to the Assault in the First Degree charge, the parties agreed that Defendant would also plead guilty to Robbery in the First Degree, and both counts of PFDCF.

5. As part of the plea agreement, the State agreed to dismiss the remaining charge of Conspiracy in the Second Degree. For the four charges comprising the guilty plea, the

---

[1] April 22, 2015 Transcript of the Plea Agreement, at * 9-12, 21.

1

minimum mandatory sentence Defendant faced was 11 years of unsuspended Level V time with a maximum sentence of 100 years of incarceration.[2] If the State had not allowed the Defendant to plead guilty to the lesser charge of Assault in the First Degree, and Defendant went to trial on the Attempted Murder in First Degree charge, he would have been facing, on that charge alone, a minimum mandatory sentence of 15 years of incarceration and up to life imprisonment.

6.      As part of the plea agreement, the State agreed to recommend the minimum mandatory sentence of 11 years of unsuspended Level V time.

7.      Defendant's mother was present during the plea negotiations. Defendant's counsel consulted with both Defendant and his mother during the plea negotiations.[3] Defendant and his mother both signed the plea agreement accepting the plea.[4]

8.      Defendant consulted with his family and with defense counsel prior to accepting the plea.[5]

9.      Prior to entering into the plea, defense counsel had met Defendant on several occasions at the New Castle County Detention Center, and several times at the court house.[6] Defense counsel also communicated with Defendant's parents.[7] The video recording which captured Defendant's robbery and shooting taking place was very damaging evidence against Defendant. In Defense Counsel's professional opinion, if Defendant went to trial there was a substantial risk of conviction for the Attempted

---

[2] April 22, 2015 Plea Transcript, at * 5-7, 12-13; April 22, 2015 Truth-in-Sentencing Guilty Plea Form.
[3] April 22, 2015 Plea Transcript, at *2, 4-5, 18.
[4] Plea Agreement dated April 22, 2015; April 22, 2015 Plea Transcript, at *5.
[5] April 22, 2015 Plea Transcript, at * 2, 4-5.
[6] April 22, 2015 Plea Transcript, * 4-5; Affidavit of Defense Counsel dated December 1, 2016 in response to Defendant's Rule 61 motion.
[7] Affidavit of Defense Counsel dated December 1, 2016 in response to Defendant's Rule 61 motion.

Murder in the First Degree charge, which alone carried a minimum mandatory sentence of 15 years of incarceration and up to life imprisonment.[8]

10.     Defense counsel believed that the plea was the best result that Defendant could hope to obtain given the facts and circumstances of this case.[9]

11.     After the entry of the plea, Defendant was immediately sentenced to the minimum mandatory 11 years of unsuspended Level V time followed by decreasing levels of probation.

12.     Defendant did not file a direct appeal to the Delaware Supreme Court.

**DEFENDANT'S RULE 61 MOTION**

13.     Defendant was sentenced on April 22, 2015.  The subject motion was filed on October 11, 2016,  almost 17 months later.

14.     In the subject motion, Defendant claims that his plea was "coerced" and uninformed, that the two counts of PFDCF should have been merged into one count, and that his counsel was ineffective for not getting him a better plea.

15.     Before making a recommendation, the Commissioner enlarged the record by directing Defendant's trial counsel to submit at Affidavit responding to Defendant's ineffective assistance of counsel claims.  Thereafter, the State filed a response to the motion.  Finally, Defendant submitted a reply thereto.[10]

16.     The claims raised in the subject motion are procedurally barred, waived and without merit.

---

[8] Affidavit of Defense Counsel dated December 1, 2016 in response to Defendant's Rule 61 motion.
[9] April 22, 2015 Plea Transcript, at * 7.
[10] Super.Ct.Crim.R. 61(g).

## A) Defendant's Motion is Procedurally Barred

17. Prior to addressing the substantive merits of any claim for postconviction relief, the court must first determine whether the defendant has met the procedural requirements of Superior Court Criminal Rule 61.[11] If a procedural bar exists, then the claim is barred, and the Court should not consider the merits of the postconviction claim.[12]

18. Rule 61 (i) imposes four procedural imperatives: (1) the motion must be filed within one year of a final order of conviction;[13] (2) any basis for relief must be asserted in the first timely filed motion for postconviction relief absent exceptional circumstances warranting a subsequent motion being filed; (3) any basis for relief must have been asserted at trial or on direct appeal as required by the court rules unless the movant shows prejudice to his rights and cause for relief; and (4) any basis for relief must not have been formally adjudicated in any proceeding. The bars to relief however do not apply to a claim that the court lacked jurisdiction or to a claim that new evidence exists that movant is actually innocent or that there is a new law, made retroactive, that would render the conviction invalid.[14]

19. Rule 61(i)(1) provides that a motion for postconviction relief is untimely if it is filed more than one year after a final judgment of conviction. In this case, Defendant was sentenced on April 22, 2015, and did not file a direct appeal. Therefore, Defendant's judgment of conviction became final 30 days after his sentence was imposed, on or about

---

[11] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).
[12] *Id.*
[13] If a final order of conviction occurred on or after July 1, 2005, the motion must be filed within one year. See, Super.Ct.Crim.R. 61(i)(1)(July 1, 2005).
[14] Super.Ct.Crim.R. 61 (effective June 4, 2014).

4

May 22, 2015.[15] The motion, filed on October 11, 2016, was filed over one year after the final judgment of conviction and is procedurally barred as untimely.

20. Moreover, in addition to being untimely, Rule 61(i)(3) required that Defendant raise his claims, with the exception of his ineffective assistance of counsel contentions, on direct appeal.[16] Defendant's ineffective assistance of counsel claims are not procedurally barred by Rule 61(i)(3) because a Rule 61 motion is the appropriate vehicle for raising these claims.[17]

21. As to the claim at issue involving alleged deficiencies with the indictment, this claim is procedurally barred by Rule 61(i)(3), for Defendant's failure to raise it on direct appeal. Defendant's claim was known to him at the time he accepted the plea. Therefore, there is no justifiable reason for Defendant's failure to raise the issue in a direct appeal if Defendant genuinely believed the claim had any merit.

22. If a procedural bar exists, the court will not consider the merits of the claims unless the defendant can show that an exception found in Rule 61(i)(5) applies. Rule 61(i)(5) provides that consideration of an otherwise procedurally barred claim is limited to claims that the court lacked jurisdiction, or to claims that new evidence exists that creates a strong inference that the defendant is actually innocent of the underlying charges for which he was convicted; or to claims that a new rule of constitutional law applicable to that defendant's case would render his conviction invalid.[18]

23. In the subject motion, all three of the claims raised in Defendant's Rule 61 motion are procedurally barred as untimely, and one of the claims is also procedurally barred for

---

[15] See, Superior Court Criminal Rule 61(m)(1).
[16] See, *Malin v. State,* 2009 WL 537060, at *5 (Del.Super. 2009); *Desmond v. State,* 654 A.2d 821, 829 (Del. 1994).
[17] *Id.*
[18] Super.Ct.Crim.R. 61(d)(2) & (5); and Rule 61(i) (effective June 4, 2014).

5

Defendant's failure to raise it on direct appeal. Defendant is unable to overcome the procedural hurdles by showing an exception in Rule 61(i)(5) applies. Defendant has not established that the court lacked jurisdiction, that any new evidence existed to create a strong inference that Defendant is actually innocent of the underlying charges, or that a new rule of constitutional law exists that would render his conviction invalid. Defendant's motion is procedurally barred.

**B)      Defendant Waived His Claims Upon Entry of His Plea**

24.      In addition to Defendant's claims being procedurally barred, Defendant's claims were also waived upon the entry of Defendant's guilty plea.

25.      Although Defendant now claims that his plea was somehow defective and was not informed due to his counsel's ineffectiveness, Defendant's claims are belied by the representations he made at the time he accepted his plea, admitted his guilt, and was sentenced.

26.      A defendant is bound by his answers on the guilty plea form and by his testimony at the plea colloquy in the absence of clear and convincing evidence to the contrary.[19] In this case, the Truth-in-Sentencing Guilty Plea Form, Plea Agreement and plea colloquy reveal that Defendant knowingly, voluntarily and intelligently entered a guilty plea to the charges for which he was sentenced.[20]

---

[19] *State v. Harden,* 1998 WL 735879, *5 (Del. Super.); *State v. Stuart,* 2008 WL 4868658, *3 (Del. Super. 2008).
[20] April 22, 2015 Plea Transcript; April 22, 2015 Plea Agreement; April 22, 2015 Truth-In-Sentencing Guilty Plea Form.

27.    At the plea colloquy, Defendant represented to the court that he had read and understood the plea agreement and the Truth-in-Sentencing Guilty Plea Form, and that he had fully reviewed the terms of the plea with his counsel.[21]

28.    Defendant represented to the court that nobody was forcing him to enter his plea. Defendant represented that he was freely and voluntarily pleading guilty to the charges listed in the plea agreement. Defendant represented that he was not being threatened or forced to do so by his attorney, by the State, or by anyone else.[22] Defendant also represented that he had "fully discussed" the matter with his attorneys and was satisfied with his counsels' representation.[23]

29.    Defendant admitted his guilt for all the charges for which he pled guilty.[24] Defendant represented that it was his desire to enter into the plea freely and voluntarily because he was guilty of the offenses to which he plead guilty.[25] Only after finding that Defendant's plea was entered into knowingly, intelligently and voluntarily, did the court accept the plea.[26]

30.    Defendant has not presented any clear, contrary evidence to call into question his prior testimony at the plea colloquy, Plea Agreement or answers on the Truth-In Sentencing Guilty Plea Form. Any claim that Defendant's plea was somehow defective, coerced, not informed, or otherwise improper is without merit.

31.    Since Defendant's plea was entered into voluntarily, intelligently and knowingly, Defendant waived his right to challenge any alleged errors, deficiencies or defects

---

[21] April 22, 2015 Plea Transcript, *9, 12-14 .
[22] April 22, 2015 Plea Transcript, *12-15; Truth-In-Sentencing Guilty Plea Form dated April 22, 2015.
[23] April 22, 2015 Plea Transcript, *13-15; Truth-In Sentencing Guilty Plea Form dated April 22, 2015.
[24] April 22, 2015 Plea Transcript, at *8-12.
[25] April 22, 2015 Plea Transcript, at *15.
[26] April 22, 2015 Plea Transcript, at *16.

7

occurring prior to the entry of his plea, even those of constitutional proportions.[27] All of Defendant's claims presented herein, including those alleging ineffective assistance of counsel, stem from allegations of defects, errors, misconduct and deficiencies which existed at the time of the entry of the plea. All of Defendant's claims were waived when he knowingly, freely and intelligently entered his plea.[28]

### C) Defendant's Claims Are Without Merit

32.     In addition to Defendant's claims being procedurally barred and waived, Defendant's claims are also without merit. In Claims One and Three, Defendant claims that his plea was somehow coerced, uninformed, and/or that his counsel was ineffective for not getting him a better plea. In Claim Two, Defendant claims that his two convictions for PFDCF should have been merged into one conviction.

33.     In order to prevail on an ineffective assistance of counsel claim, the defendant must meet the two-pronged *Strickland* test by showing that: (1) counsel performed at a level "below an objective standard of reasonableness" and that, (2) the deficient performance prejudiced the defense.[29] The first prong requires the defendant to show by a preponderance of the evidence that defense counsel was not reasonably competent, while the second prong requires him to show that there is a reasonable probability that, but for defense counsel's unprofessional errors, the outcome of the proceedings would have been different.[30]

34.     In the context of a plea challenge, it is not sufficient for the defendant to simply claim that his counsel was deficient. The Defendant must also establish that counsel's

---

[27] *Somerville v. State*, 703 A.2d 629, 632 (Del. 1997); *Modjica v. State*, 2009 WL 2426675 (Del. 2009); *Miller v. State*, 840 A.2d 1229, 1232 (Del. 2004).
[28] See, *Mills v. State*, 2016 WL 97494, at *3 (Del.)
[29] *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984).
[30] *Id.* at 687-88, 694.

actions were so prejudicial that there was a reasonable probability that, but for counsel's deficiencies, the defendant would not have taken a plea but would have insisted on going to trial."[31] Mere allegations of ineffectiveness will not suffice; instead, a defendant must make and substantiate concrete allegations of actual prejudice.[32]

35. Turning to Defendant's First and Third Claims, that his plea was somehow improper because his counsel "deceived" him by not fully discussing the charges and plea, that his counsel did not advise him how to obtain a better plea, that he did not have proper knowledge of the plea, and/or that his plea was somehow coerced, these claims are without merit.

36. Any claim that Defendant did not freely and voluntarily accept the plea is directly at odds with the representations he, himself, made to the court at the time he accepted the plea. Indeed, at the time of the plea, Defendant represented that he had been fully advised of his options, that nobody was forcing him to enter his plea, that he was freely and voluntarily pleading guilty to the charges listed in the plea agreement, and that he was satisfied with his counsel's representation.

37. Defendant was faced with a choice. Defendant could either accept the plea to significantly reduced charges of Assault in the First Degree with the State agreeing to recommend the minimum mandatory sentence of 11 years of incarceration for the four charges included in the plea, or Defendant could proceed to trial on five charges including the charge of Attempted Murder in the First Degree. If he went to trial, he would be facing a sentence of up to life imprisonment if convicted at trial.

---

[31] *Strickland v. Washington*, 466 U.S. 668, 687-88, 694 (1984); *Somerville v. State*, 703 A.2d 629, 631 (Del. 1997); *Premo v. Moore*, 131 S.Ct. 733, 739-744 (2011).
[32] *Younger v. State*, 580 A.2d 552, 556 (Del. 1990).

9

38.    The State did not have to offer Defendant a plea deal, and had Defendant not accepted the plea deal, the State had no obligation to offer Defendant either this deal, or any other plea deal, at any time in the future. Defendants have no constitutional right or other legal entitlement to a plea bargain.[33]

39.    Prior to accepting the plea, Defendant's trial counsel extensively discussed Defendant's options with both Defendant and his family. Defendant, after extensive discussions, made the voluntary decision to accept the plea. Indeed, Defendant's mother also signed the plea agreement accepting the plea. Defendant received a significant benefit by pleading guilty, and being spared, if convicted, of a significantly greater sentence. Defendant's decision to accept the plea offer represented a rational choice given the pending charges, the evidence against him, and the potential sentences he was facing if convicted at trial.

40.    Defense counsel recognized the plea deal for what it was, the best they could hope for, and urged Defendant to accept it. Defense counsel is not aware of how a better plea offer could have been obtained in this case.[34]

41.    Any claim that the plea was coerced or that Defendant was somehow not informed about the consequences of entering into the plea is belied by Defendant's representations at the time of the plea and is without merit. Defendant has not established that his counsel was deficient in any regard nor has he established that he suffered any actual prejudice as a result thereof.

42     Turning to the final claim, Claim Two, Defendant contends that his two convictions for PFDCF, should have been merged into one charge. Defendant claims that

---

[33] *Washington v. State*, 844 A.2d 293, 296 (Del. 2004).
[34] Affidavit of Defense Counsel dated December 1, 2016 in response to Defendant's Rule 61 motion.

10

he was charged with two counts of PFDCF for one felony. Defendant does not seem to comprehend that he was charged with two counts of PFDCF for the commission of two felonies: one of the gun charges was linked to the robbery and the other gun charge was linked to the shooting.[35]

43. Under Delaware law, it is not a violation of double jeopardy for the State to charge PFDCF for each firearm possessed and for each felony committed.[36] Consequently, there was no violation of Defendant's constitutional rights to be charged, and convicted, of two counts of PFDCF, one count linked to each of the two felonies committed: the robbery and the shooting.

44. As discussed above, Defendant's guilty plea was knowingly, voluntarily and intelligently entered. Any claim that the plea was coerced, that he was not fully informed, or that he somehow did not understand the consequences of entering into the plea is belied by Defendant's representations at the time of the plea, and is without merit. Any such claims were waived when Defendant accepted the plea offer. Defendant's claims are procedurally barred, waived and without merit.

---

[35] See, December 8, 2014 Indictment; April 22, 2015 Plea Transcript, at *10-12.
[36] See, Carter v. State, 2006 WL 3053268, *1 (Del.); Nance v. State, 903 A.2d 283, 288 (Del. 2006).

11

For all of the foregoing reasons, Defendant's Motion for Postconviction Relief should be denied.

**IT IS SO RECOMMENDED.**

_____
Commissioner Lynne M. Parker

oc: Prothonotary
Robert M. Goff, Esquire
The Honorable Natalie J. Haskins